(CHANCERY.)

## CAMPBELL v. PRATT *et al.*

Explanation of the former decree of this Court in the same case,
9 *Cranch*, 500.

THIS cause was argued by Mr. *Key*, for the ap- *March* 13th.
pellant, and by Mr. *Jones*, for the respondents.

Mr. Justice JOHNSON delivered the opinion of the *March* 16th.
Court. The principal question in this case is, whe-
ther the Circuit Court has executed the decrees for-
merly pronounced between these parties,[a] according
to their true intent and meaning. Some obscurity
has been thrown over the meaning of those decrees,
from an obvious error in copying them into the mi-
nutes. The primary object of this Court was, to
give to Law the benefit of a foreclosure in all the lots
included in the mortgage from Morris, Nicholson and
Greenleaf, in whose right, Pratt, Francis and Com-
pany founded their claim. But being called upon
by the equity of intervening interests, (in creating
which Law himself had had some agency,) they de-
creed a distribution of the whole amount due to
Law, between that class of lots, still held by the
mortgagor, and that which had passed into the hands

a S. C. 9 *Cranch*, 500.

of the present appellants. This class was again subject to another discrimination, inasmuch as thirteen of the thirty-two purchased by the appellant, were subject to a second mortgage, executed by Morris, Nicholson, and Greenleaf, to one Duncanson, and the equitable interest in which was adjudged to the assignee of Greenleaf. The sum which thirty-two lots were decreed to contribute to the payment of Law, was to be determined by the ratio which these lots bore to the whole of the mortgaged premises.

It is now contended, that another distribution of the sum thus charged, is to be made between the lots thus mortgaged to Duncanson, and the remaining lots of this class. And it is ascertained, that the consequence will be, putting a considerable sum in the pocket of this appellant, to the prejudice of Duncanson's mortgage, as the sale of those thirteen lots falls considerably short of satisfying the sum decreed on that mortgage. That is, that these thirteen lots shall be charged rateably with the sum charged upon the whole class, so as to contribute to relieve the remaining lots, and by thus contributing to the satisfaction of Law's mortgage, leave the larger sum from the sale of the remaining lots to be paid over to this appellant. This, it is contended, is both conformable to the decree, and to general principles.

If conformable to the decree, it is in vain to refer to general principles. But, we think, the purport of the decree is obviously otherwise. Campbell, claim-

ing as purchaser at sheriffs' sales, under an attachment of the interest of the mortgagors, filed his bill for a redemption of the whole of this class of lots, and the Court decreed, that he be permitted to redeem, on payment, first, of the ratio of Law's mortgage, charged on this class, secondly, on payment of two thirds of the amount of principal and interest of the debt due to Duncanson. And as the opposite claimants had filed their bill for a foreclosure, a sale is ordered of the whole of this class of lots to raise the money, to be applied in the same manner, if Campbell should fail in six months to redeem. The application of the amount of sales must then be regulated by the right of redemption as decreed to Campbell; and that is, that he pay, first, the contribution to Law, secondly, the amount due to Duncanson, upon which conditions only he could hold the lots discharged of the mortgages, and, consequently, after those payments only, could he receive the balance of the money, the representative of his remaining interest in the land.

And this exposition of the decree is perfectly consonant with general principles. All the doubt in the case has been raised by the effort to exhibit this appellant as the holder of an independent interest, that is, as a third incumbrancer. But this is by no means his relative character. He is nothing more than the legal representative of the interests of Morris, Nicholson, and Greenleaf, in the lots attached, and sold to him. The attachment was levied upon the equity of redemption existing in those mortga-

gors; and the decision of this Court, in supporting his right, was placed upon the decision of the Courts of Maryland, (in which the land then lay,) which maintained the validity of an attachment levied upon an equity of redemption. He was, then, nothing more than the assignee of an equity of redemption, and could claim no greater equity as against either Duncanson or Law. That he was not to be considered as a subsequent incumbrancer, is conclusively determined by this consideration, that there would then have been no equity of redemption outstanding in any one. In the relation of the assignee of an equity of redemption, he appeared first in this Court, and it is obvious from the former decree, that in that light only did this Court view him. In this light, he could lay claim to no rights inconsistent with those of the creditor; and, as far as the proceeds of the 13 lots were adequate to satisfying Duncanson, he could be entitled to nothing until that debt was paid. Any other application of the proceeds of those lots would be preferring the mortgagor to the mortgagee, or the debtor to the creditor; and confer on the assignee of the equity of redemption, a greater equity against the mortgagee than could have been decreed to the original mortgagor.

That part of the decision of the Circuit Court, will, therefore, be affirmed. But of the remaining two points, it will be necessary to refer the subject, in order to have the statements and evidence in this record compared, upon which a conclusion must be formed. If this appellant has been charged with a greater amount than his just ratio of the debt due to

Law, he is entitled to relief. But the principles being established, this becomes a mere matter of numerical calculation.

Decree accordingly.